IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRADLEY J. MCLACHLAN & ALEX D. GRAHAM,** individually and on behalf of all others similarly situated, <br> *Plaintiffs,* <br><br> v. <br><br> **THE BOARD OF TRUSTEES OF THE ELEVATOR CONSTTRUCTORS ANNUITY AND 401(K) RETIREMENT PLAN et al.,** <br> *Defendants*. | **CIVIL ACTION** <br> **NO. 22-4115** |

**MEMORANDUM RE: FINAL APPROVAL, FEES, AND EXPENSES**

**Baylson, J.**                                                                                      **April 15, 2025**

In this class action, two participants in a multi-employer retirement plan allege that the plan's Trustees breached their fiduciary duties under ERISA by retaining more expensive and underperforming funds, failing to monitor excessive record keeping and administrative fees and costs, and failing to monitor investment management fees. Before this Court are Plaintiffs' Unopposed Motion for Final Approval, ECF 80, and Motion for Attorneys' Fees, ECF 81. For the reasons discussed below, Plaintiffs' Motion for Final Approval is **GRANTED** and Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Incentive Awards is **GRANTED in part and DENIED in part**.

I.   **FACTUAL ALLEGATIONS**

A.   **The Plan**

Plaintiffs participate in the Elevator Constructors Annuity and 401(k) Retirement Plan ("Plan"), a multiemployer contribution plan. Am. Compl. ¶¶ 20, 22, 34, ECF 15. As of December 31, 2020, the Plan had $1,585,494,544.00 in assets under management. Id. ¶ 44.

B. **The Trustees**

The Plan is sponsored by the Board of Trustees of the Elevator Constructors Annuity and 401(k) Retirement Plan ("Trustees"). Am. Compl, ECF 15. The Trustees were Plan fiduciaries. Id. ¶ 24. Plaintiffs allege that the Trustees were obligated to ensure the investments available to Plan participants are appropriate, had no more expense than reasonable and performed well as compared to their peers and that the Plan paid a fair price for the Plan's recordkeeping and administration ("RKA") services. Id. ¶ 22.

C. **The Named Plaintiffs**

Plaintiffs participated in the Plan and invested in options offered by it, and now allege that they were subject to the excessive RKA costs. Id. ¶¶ 18, 19. Plaintiffs allege they overpaid for RKA costs, was subject to underperforming and excessively expensive investments, and had to pay his share of consulting fees to maintain these non-preferred investments. Id.

D. **Purported Breaches Of Fiduciary Duties**

i. **The Plan's Recording Keeping And Administrative ("RKA") Costs**

RKA service fees include the "the suite of administrative services typically provided to a defined contribution plan by the plan's 'recordkeeper.'" Id. ¶ 65. The Plan's Recordkeeper, provided services[1] for the Plan, which paid RKA fees collected per participant. Id.

Plaintiffs allege that the Trustees were required to ensure that the Plan paid a fair price for the Plan's RKA services and must remain informed about the trends regarding fees paid by other

---

[1] Plaintiffs allege that there are two types of essential RKA services provided to entities like the Plan. According to Plaintiffs, first, an overall suite of RKA services is provided as part of a "bundled" fee, including recording keeping, transaction processing, administrative services, communications, service documents, and compliance support. Am. Compl. ¶ 66, ECF 15. These bundled services are offered for a standard price. Id. Second, "a la carte" require additional fees based on the conduct of individual participants and the usage of the services by individual participants. Id. ¶ 68. Mass Mutual allegedly provided both services to the Plan. Id. ¶¶ 70, 80.

2

Plans. Id. ¶¶ 22, 90. But, Plaintiffs allege the Plan charged RKA fees that were well above industry standard and that the Trustees could have obtained services that were comparable or superior to the typical services provided by the recordkeeper at a lower cost. Id. ¶¶ 77–79, 91.[2]

### ii. The Plan's Investment Offerings

Plaintiffs allege that the Plan had a total cost that was more than 160% higher than the median for similar plans. Id. ¶ 57. Plaintiffs allege that the Trustees breached their fiduciary duties by failing to replace higher cost and underperforming funds, which had near-identical lower cost alternatives and/or were better-performing. Id. ¶¶ 92, 94–95. Plaintiffs allege that the Trustees failed to monitor investment management fees for the Plan's investments, resulting in funds being more expensive and worse performing than comparable funds. Id. ¶ 52.

### iii. The Plan's Target Date Funds

The Plan offers the T.Rowe Price Retirement target date funds. Id. ¶¶ 103, 105. The T.Rowe Price Target date funds exist in several share classes: Investor Class, Advisor Class, and collective investment trust (CIT). Id. ¶ 105. Plaintiffs allege that the Plan offered only the more expensive Advisor Class funds, which had expense ratios around .9%. Id. In 2019, Plaintiffs allege that the Plan began offering the Investor Class funds, which had expense ratios around .5%, which was still not the best choice. Id. ¶¶ 105–06. Plaintiffs assert that the Plan could have qualified for a lower-cost CIT version of the T. Rowe Price funds, resulting in more savings. Id.

### iv. The Plan's Insurance Annuities Investments

Plaintiffs allege that the Plan breached its fiduciary duties by allocation a disproportionately large portion of its substantial assets (around 69%) to high-cost, opaque

---

[2] For example, RKAs fees allegedly ranged from $95.76 to $125.88 per participant, id. ¶ 78, whereas other plans' participants pay less (e.g., $14 to $30 per participant), id. ¶¶ 83–84, 86.

3

insurance-based annuity products. Id. ¶ 107. Plaintiffs allege the Plan could have accessed lower-cost investments and that its failure to do so disadvantaged Plan participants. Id. ¶ 110.

## II. PROCEDURAL HISTORY

On October 13, 2022, Plaintiffs filed a Complaint alleging breach of fiduciary duties and failure to adequately monitor other fiduciaries. ECF 1. On December 6, 2022, Plaintiffs filed an Amended Complaint. ECF 15. On January 20, 2024, the Trustees moved to dismiss Plaintiffs' First Amended Complaint. ECF 17. This Court denied the Motion to Dismiss. ECF 35.

On November 17, 2023, the Court stayed the case pending mediation and subsequently extended the stay. ECF 53, 56, 63, 64. On August 22, 2024, Plaintiffs filed an unopposed Motion for Preliminary Approval of a Class Action Settlement, Approval of the Form and Manner of Class Notice, and to Schedule a Fairness Hearing. ECF 65. On November 26, 2024, the Court preliminarily approved the Settlement in this Action which provides for the creation of a $5,000,000 Settlement Fund, conditionally certified a Settlement Class, and appointed Class Representatives and Class Counsel. ECF 78. On February 24, 2025, Plaintiffs filed an Unopposed Motion for Final Approval of Class Action Settlement, ECF 80, and Motion for Attorneys' Fees, ECF 81. On April 10, 2025, this Court held a hearing to determine the fairness of the Settlement and the subjects of these Motion. ECF 86.

## III. THE SETTLEMENT AGREEMENT

### A. The Class

Plaintiff proposes a class of "[a]ll persons who have been participants, beneficiaries and alternate payees of the Plan from October 13, 2016[,] through the date of the Preliminary Approval Order, except for past and present members of the Board from October 13, 2016 through the date of the Preliminary Approval Order," which is November 26, 2024. Mot. for Final Approval at 4–

4

5, ECF 80-1; Settlement Ag. at § 1.49, ECF 82-1.  The Class Period is October 13, 2016, through November 26, 2024.  Mot. for Final Approval at 4, ECF 80-1.

### B. The Terms

#### i. Settlement Fund

Under the Settlement, the Trustees will pay $5,000,000.00 ("Settlement Fund") to be allocated to participants on a pro-rata basis in exchange for releases and dismissal of this action. Id.  The Settlement Fund will be used to pay recoveries, administrative expenses, attorneys' fees and costs, and Class Representative compensation.  Id.

#### ii. Class Counsel's Costs and Fees

Class Counsel seeks attorneys' fees from the Settlement Fund not to exceed $1,666,500.00. Mot. for Final Approval at 5, ECF 80-1 (citing Settlement Ag. § 1.6, ECF 82-1).  Class Counsel seeks to recover litigation costs and expenses not to exceed $75,000.00.  Id.

#### iii. Class Representatives' Case Contribution Awards

Class Counsel seeks Case Contribution Awards for Class Representatives Bradley J. McLachlan and Alex D. Graham in an amount not to exceed $8,000.00 per person.  Mot. for Final Approval at 5, ECF 80-1 (citing Settlement Ag. at § 1.12, ECF 82-1).

#### iv. Independent Fiduciary

Class Counsel states that the Trustees intend to retain an Independent Fiduciary to approve and authorize the settlement on behalf of the Plan.  Mot. for Final Approval at 5, ECF 80-1 (citing Settlement Ag. at § 1.28, ECF 82-1).  This amount will not exceed $25,000.00. Id.

#### v. Settlement Administrator and Escrow Agent

Class Counsel states that the fees and expenses of the Settlement Administrator and Escrow Agent will not exceed $100,000.00.  Mot. for Final Approval at 5, ECF 80-1 (citing Settlement Ag. at § 1.3, ECF 82-1).

IV. **DISCUSSION**

A. <u>**Certification of the Settlement Class**</u>

While the Federal Rules of Civil Procedure do not expressly address certification of a class for settlement purposes, such class certification may be appropriate. <u>See</u> <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 777–78 (3d Cir. 1995) ("GM Trucks"). The Court must determine whether the requirements for class certification under Fed. R. Civ. P. 23(a) and (b) are met, and separately determine that the settlement is fair, reasonable, and adequate. <u>Lunemann v. Kooma III LLC</u>, 2024 WL 2133803, at *3 (E.D. Pa. May 13, 2024) (Marston, J.). A class action is permitted if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, the class must be ascertainable. <u>Marcus v. BMW of N. Am. LLC</u>, 687 F.3d 583, 593 (3d Cir. 2012); <u>Reyes v. Netdeposit, LLC</u>, 802 F.3d 469, 482 (3d Cir. 2015). Plaintiffs seek certification of the Settlement Class under Fed. R. Civ. P. 23(b).

Pursuant to Fed. R. Civ. P. 23(a), the Court finds that: (a) the Settlement Class is so numerous that joinder is impracticable;[3] (b) there are questions of law and fact common to the Settlement Class that predominate over individual questions;[4] (c) Named Plaintiffs' claims are

---

[3] Rule 23(a)(1) "is generally satisfied if there are more than 40 class members." <u>In re Nat'l Football League Players Concussion Inj. Litig.</u>, 821 F.3d 410, 426 (3d Cir. 2016) ("<u>In re NFL</u>"). Here, the Settlement Class is several thousand Plan participants. Mem. on Mot. for Cert. at 14, ECF 67; Gyandoh Decl. on Prelim. Approval ¶ 51, ECF 68. This renders joinder impracticable. <u>See</u> <u>In re Ikon Office Sols., Inc.</u>, 191 F.R.D. 457, 462 (E.D. Pa. 2000) (Katz, J.) (finding numerosity satisfied in ERISA case with thousands of plan participants).

[4] Rule 23(a)(2) requires questions of law or fact common to the class, Fed. R. Civ. P. 23(a)(2), such that class members "share at least one question of fact or law with the grievances of the prospective class." <u>In re NFL</u>, 821 F.3d at 426–27 (quoting <u>Rodriguez v. Nat'l City Bank</u>, 726

6

typical of the Settlement Class;[5] (d) Class Counsel and Named Plaintiffs fairly and adequately represent the Settlement Class' interests;[6] and (e) the Settlement Class is ascertainable.[7] Additionally, pursuant to Fed. R. Civ. P. 23(b)(1), the certification of the Settlement Class is appropriate.[8]

---

F.3d 372, 382 (3d Cir. 2013)). Settlement Class Members share numerous questions of law or fact with the Named Plaintiffs, including whether they were injured by the Trustees' alleged breach of fiduciary duties. Mem. on Mot. for Cert. at 15, ECF 67; see Boley v. Univ. Health Servs., Inc., 337 F.R.D. 626, 631 (E.D. Pa. 2021) (Kearney, J.), aff'd, 36 F.4th 124 (3d Cir. 2022) ("The [] Plan-wide conduct further impacted all Plan participants in a similar way . . . through the payment of excessive fees.").

[5] Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are legally and factually similar to the Settlement Class' claims since all were subject to the same recordkeeping fees and allege a similar harm resulting from the Trustees' purported breach of fiduciary duties. Mem. on Mot. for Cert. at 15–16, ECF 67; see In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 599 (3d Cir. 2009) (noting "there is no doubt" that a plan participant bringing fiduciary duty claims on behalf of a plan satisfies typicality).

[6] Rule 23(a)(4) requires class representatives who will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts considering adequacy of representation examine "the qualifications of class counsel and the class representatives." Id. at 428. The Court is satisfied that the Named Plaintiffs understand the nature of their claims and duties as class representatives. Mem. on Mot. for Cert. at 16, ECF 67; McLachlan Decl. on Prelim. Approval ¶¶ 5–6, ECF 68-2; Graham Decl. on Prelim. Approval ¶¶ 5–6, ECF 68-3.

Further, with respect to Class Counsel's adequacy, a court should consider whether the attorneys "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." In re GMC, 55 F.3d 768, 801 (3d. Cir. 1995). Courts should consider the non-exhaustive list of factors in Rule 23(g). In re NFL, 821 F.3d at 429 (citing Fed. R. Civ. P. 23(g)(1)(A)). Class Counsel has substantial experience handling ERISA class actions. See Gyandoh Decl. on Prelim. Approval ¶¶ 38, 40, 41, 44–48, ECF 68. Based on consideration of these factors, Class Counsel's representation satisfies Fed. R. Civ. P. 23.

[7] The plaintiff has the burden of showing that the class is ascertainable by demonstrating that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015) (quoting Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013)). Here, because the parties can determine number and identities of participants and beneficiaries of the Plan, the Settlement Class is ascertainable.

[8] Under Rule 23(b)(1)(A), class certification is appropriate "when one plaintiff's pursuit of claims 'would be dispositive of the interests' of the other plaintiffs' actions concerning the same claims that all relate to the same plans, damages, and alleged breaches of fiduciary duties." Sweda v. Univ. of Pa., 2021 WL 2665722, at *5 (E.D. Pa. June 29, 2021) (Pratter, J.) (quoting Fed. R.

Accordingly, the Settlement Class is certified.

### B. Notice to the Settlement Class

Notice provided to the Settlement Class complied with the requirements of Fed. R. Civ. P. 23(c)(2) and was reasonably calculated to apprise the Settlement Class of the action and Settlement Class Members' right to object to the Settlement Agreement and appear at the April 10, 2025, final approval hearing. The Court is satisfied that notice was given "in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1), and was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to" object. Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950).[9] Accordingly, the Court finds that notice was proper.

### C. Approval of Settlement

#### i. Legal Standard

An presumption of fairness attaches to a proposed settlement if (1) negotiations occurred at arm's length, (2) sufficient discovery occurred, (3) proponents have experience in similar cases,

---

Civ. P. 23(b)(1)(B)). Rule 23(b)(1)(B) certification is appropriate where a case "charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries . . . ." Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment). Here, class-wide relief is appropriate because "allowing separate actions to be brought by individual participants could 'result in outcomes likely to be dispositive of the interests of other Plan participants.'" Sweda, 2021 WL 2665722, at *5 (citing Boley, 337 F.R.D. at 639).

[9] The Settlement Notice & Administrator, Angeion Group, LLC, ("Angeion") sent notice of the settlement to all Attorney Generals pursuant to 28 U.S.C. § 1715, mailed the short-form postcard notice to the 16,032 class members without email addresses, and sent email settlement notices to 23,058 class members (with a 99.54% delivery rate). Mot. for Final Approval at 6–7, ECF 80-1. The notices included a description of Settlement terms, deadline to opt out, and deadline to object to the Settlement and notice directed individuals to a public website that included (1) the Settlement Notice, (2) the Settlement Agreement, (3) the Order, (4) the Plan of Allocation, and (5) other relevant Court documents, and (6) contact information. Id. at 7 (citing Flynn Decl. ¶ 13, ECF 82-2). This satisfies Fed. R. Civ. P. 23 and due process.

and (4) few class members objected. In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 436 (3d Cir. 2016) ("In re NFL"). A district court must find that a settlement is "fair, adequate, and reasonable" pursuant to Fed. R. Civ. P. 23(e)(2). Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995) (quoting Walsh v. Great Atl. & Pac. Tea Co., Inc., 726 F.2d 956, 965 (3d Cir. 1983)) (internal quotation marks omitted). In Girsh v. Jepson, the Third Circuit articulated nine factors that a district court should weigh in evaluating the fairness of a class settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d, 153, 157 (3d Cir. 1975). In addition, Courts may consider (1) the maturity of the underlying substantive issues, (2) the existence and probable outcome of other claims, (3) the results likely to be achieved for other claimants, (4) opt-out rights, (5) reasonableness of fees, (6) claim processing fairness. In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998). Lastly, in In re Baby Prods. Antitrust Litig., 708 F.3d 163, 174 (3d Cir. 2013), the Third Circuit articulated an additional inquiry: the degree of direct benefit provided to the class, including the number of individual awards compared to the number of claims and the number of class members, the size of individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards. Id.

    ii. Analysis

        1. The Presumption of Fairness Applies

The Settlement is presumptively fair. See In re NFL, 821 F.3d at 436 (citing In re Cendant Corp. Litig., 264 F.3d 201, 233 (3d Cir. 2001) ("In re Cendant")). First, the parties meaningfully participated in mediation and negotiated the Settlement at arm's-length before a neutral, third-

9

party mediator with ERISA experience. Mot. for Final Approval at 3, ECF 80-1; see In re CIGNA Corp. Sec. Litig., 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (Baylson, J.) ("[N]egotiations for the settlement occurred at arm's length, as the parties were assisted by a . . . mediator"). Second, Plaintiffs conducted extensive informal discovery and Defendants produced nearly 23,000 pages of documents. Mot. for Final Approval at 10, ECF 80-1; see In re NFL, 821 F.3d at 436–37 (finding informal discovery sufficient for a presumption of fairness). Third, Class Counsel is experienced in ERISA litigation and understood the merits of liability and damages arguments and could evaluate these positions. Mot. for Final Approval at 10, ECF 80-1; In re NFL, 821 F.3d at 436–37. Fourth, Class Counsel received no objections after notice to the Settlement Class Members. Mot. for Final Approval at 1, 10, ECF 80-1; Supp. Mem. at 2, ECF 85; In re Processed Egg Prods. Antitrust Litig., 284 F.R.D. 249, 269 (E.D. Pa. 2012) (Pratter, J.) (finding that objections from 1.14% of notice recipients was *di minimis*).

Therefore, the presumption of fairness applies.

### 2. The Girsh Factors Are Satisfied

The Court concludes, for the reasons detailed below, that the Girsh factors weigh in favor of approving the Settlement and indicate that it is fair, reasonable, and adequate.[10]

#### a. Complexity, Expense, & Likely Duration Of Litigation

Litigating this case would involve complex accounting issues with respect to damages and would require expert testimony. Moreover, the fact that the Plan at issue is a multi-employer plan adds complexity to litigation. This factor weighs in favor of approval of this Settlement Agreement because litigating this case "carries a high probability of high costs if it is continued until final

---

[10] Notably, as part of the settlement, an Independent Fiduciary reviewed the Settlement and found that it was fair and reasonable. See Report of Independ. Fiduciary at 13 ECF 85-2.

disposition on its merits" and would be highly complex. Diaz v. BTG Int'l Inc., 2021 WL 2414580, at *6 (E.D. Pa. June 14, 2021) (Younge, J.).

### b. The Reaction Of The Class

"The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." In re Cendant, 264 F.3d at 235. Indeed, this factor is notable here, where there were no objectors after notice was mailed to the 16,032 class members and emailed to 23,058 class members (with a 99.54% delivery rate). Mot. for Final Approval at 1, 6–7, 10, ECF 80-1; Supp. Mem. at 2, ECF 85; see In re Processed Egg Prods. Antitrust Litig., 284 F.R.D. at 269 (finding that objections from 1.14% of notice recipients was *di minimis*). This factor weighs strongly in favor of settlement.

### c. The Stage Of The Proceedings

This factor weighs in favor of settlement. Plaintiffs conducted informal discovery, including the engagement of consulting experts, and Defendants produced nearly 23,000 pages of documents. Mot. for Final Approval at 10–11, ECF 80-1. The Court believes that "because of the nature of the case," the parties "had an excellent idea of the merits of its case . . . at the time of the Settlement," which was the result of post-informal discovery mediation. In re Cendant, 264 F.3d at 236; see Mot. for Final Approval at 10–11, ECF 80-1.

### d. The Risks Of Establishing Liability

Plaintiffs argue that the risk of establishing liability was high in this case because of the risks inherent to imprudent investment claims and excessive recordkeeping fee claims. Mot. for Final Approval at 12, ECF 80-1. Plaintiff highlights that counsel "is particularly qualified to realistically evaluate the risks of continued litigation" due to experience trying an analogous case to an unfavorable verdict for plaintiffs. Id. at 13 (citing Gyandoh Decl. ¶ 90, ECF 82). Evaluating

11

the risks and rewards of litigation based on Plaintiffs' arguments, this Court finds that this factor weights mildly in favor of the Settlement.

### e. The Risks Of Establishing Damages

Much of the determination of damages if this case went to trial would be based on expert testimony involving complex mathematical calculations and projections. Mot. for Final Approval at 14, ECF 80-1; see Diaz, 2021 WL 2414580, at *6. "Plaintiffs faced the risk of an adverse verdict if this action had been litigated to conclusion . . . [and] faced the risk of a low damage award after substantial investment of both time and money." Diaz, 2021 WL 2414580, at *6. This Court finds that this factor weighs moderately in favor of the Settlement.

### f. The Risks Of Maintaining Class Action Through Trial

A district court can alter or amend its decision to certify a class under Rule 23(c)(1)(C). See Corra v. ACTS Ret. Servs., Inc., 2024 WL 22075, at *8 (E.D. Pa. Jan. 2, 2024) (Pratter, J.). Indeed, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." Prudential, 148 F.3d at 321. While the Court granted certification of the Settlement Class, there is no guarantee that Plaintiffs would maintain that status through litigation. This Court finds that this favor is neutral.

### g. Defendants' Ability To Withstand A Greater Judgment

As the Third Circuit has noted, this factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." In re NFL, 821 F.3d at 440. The Court finds this factor neutral because no party has cited the Trustees' financial instability as a justification for the settlement.

### h. The Range of Reasonableness Considering the Best Possible Recovery & in Light of Litigation Risks

The Court should compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." Prudential, 148 F.3d at 322 (quotation omitted). The Court finds that the $5,000,000.00 Settlement amount is an appropriate discount to avoid the risk of continued litigation, particularly considering the parties' disparities in damages estimates. The Settlement represents around a 5.11% recovery based on Plaintiffs' estimate of maximum damages or a 40.6% recovery based on Defendants' estimate of damages. Mot. for Final Approval at 14, ECF 80-1 (citing Gyandoh Decl. ¶¶ 31–34, ECF 82). Considering the risks, the Settlement Amount—negotiated at arm's length with the hands-on involvement of an experienced mediator—is reasonable since there is a probability that proceeding to trial would have yielded no recovery. This weighs in favor of approval of the Settlement.

### 3. Prudential Considerations

The relevant Prudential factors weigh both in favor of and against approval of the Settlement Agreement, render the relevant Prudential factors effectively neutral.

Class Members cannot exclude themselves from this action, Settlement Ag. at 49 ECF 82-1, and for the reasons discussed below, the reasonableness of the requested attorneys' fees. Mot. for Final Approval at 20, ECF 80-1; see infra. Both weigh against approving the Settlement.

Other factors weigh in favor of approval of the Settlement. The Settlement Agreement's method of processing claims treats Settlement Class Members fairly by distributing pro rata shares. See Castro v. Sanofi Pasteur Inc., 2017 WL 4776626, at *7 (D.N.J. Oct. 23, 2017); Rossini v. PNC Fin. Servs. Grp., Inc., 2020 WL 3481458, at *17 (W.D. Pa. June 26, 2020). Moreover, that the Angeion Group, an independent company, will serve as the Settlement Administrator provides

13

evidence of a fair and reasonable procedure. See Corra, 2024 WL 22075, at *8. Both factors weigh in favor of approval of the Settlement.

### 4. Baby Prods. Evaluation

One final factor, "the degree of direct benefit provided to the class," is to be evaluated by examining "the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards." In re Baby Prods. Antitrust Litig., 708 F.3d at 174. Here, this evaluation weighs in favor of approval.

First, the number of individual awards compared to the number of claims and estimated class members is irrelevant here because all identified Settlement Class Members will receive an award. See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig., 2024 WL 815503, at *5 (E.D. Pa. Feb. 27, 2024) (Goldberg, J.). Second, as to the size of the individual awards compared to damages, "the Settlement represents a compromise," as it is less than Plaintiffs sought but more than Defendants believed they were liable for, "but still awards each class member a substantial direct benefit that is immediate and guaranteed." Id. Third, and as analyzed above, the claims process used to determine individual awards is fair as it provides a pro rata share to all Settlement Class Members. Cantave v. Saint Joseph's Univ., 2024 WL 4829718, at *5 (E.D. Pa. Nov. 19, 2024) (Baylson, J.).

### 5. Conclusion as to Fairness of the Settlement

The Court finds that the Settlement is fair, reasonable, and adequate. Lending the Settlement the requisite presumption of fairness, the Court notes that the Girsh factors, the Prudential factors, and the Baby Products together counsel in favor of approval of the Settlement. Accordingly, the Court hereby **GRANTS** final approval of the Settlement.

### D. Motion for Attorneys' Fees, Litigation Expenses, and Incentive Awards

#### i. Incentive Awards

While "[r]easonable payments are permissible to compensate named plaintiffs for the expenses they incur during the course of class action litigation," Fed. R. Civ. P. 23 does not contemplate special treatment for named plaintiffs. First State Orthopaedics v. Concentra, Inc., 534 F. Supp. 2d 500, 524 (E.D. Pa. 2007) (Shapiro, J.) (citing Nichols v. SmithKline Beecham Corp., 2005 WL 950616, at *24 (E.D. Pa. Apr. 22, 2005) (Padova, J.) & Godshall v. Franklin Mint Co., 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) (Rufe, J.)).

Class Counsel seeks incentive awards for McLachlan and Graham in an amount not to exceed $8,000.00 per person. Mot. for Final Approval at 5, ECF 80-1 (citing Settlement Ag. at § 1.12, ECF 82-1). While Settlement Class Members voiced no objections to these payments, the Court nonetheless finds that the payment of $8,000.00 per Class Representative would be improper, particularly since the requested award would reduce the payment to other Settlement Class Members. See Godshall, 2004 WL 2745890, at *6; see Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 769–70 (E.D. Pa. 2016) (Robreno, J.). The amount of time each Class Representative spent on the litigation[11] is not so notable that it warrants $8,000.00 per person. See Alberici v. Recro Pharma, Inc., 2022 WL 17364637, at *7 (E.D. Pa. Dec. 1, 2022) (Baylson, J.) (declining contribution award where Class Representatives spent 17, 30, and 40 hours on litigation activities and noting that "[a]ny Plaintiff who wishes to be involved in litigation must be expected to spend some time assisting counsel in discovery and other preparations, without compensation"). Instead, each Named Plaintiff is entitled to $1,000.00 as an Incentive Award.

---

[11] Plaintiff McLachlan estimates that he has spent between 36 and 41 hours on this litigation. Supp. McLachlan Decl. ¶ 4, ECF 84-1. Plaintiff Graham estimates that he has spent between 35 and 40 hours on this litigation. Supp. Graham Decl. ¶ 4, ECF 84-1.

### ii. Expenses

Plaintiffs' actual litigation expenses are $24,125.44, which includes FedEx, Court filing costs, travel expenses, research expenses, e-discovery, and mediation as detailed in Attorney Gyandoh's Supplemental Declaration. Mot. for Fees at 17, ECF 81-1; Gyandoh Supp. Decl. ¶ 20, ECF 84. After review of the receipts attached to Attorney Gyandoh's Supplemental Declaration, the Court approves the payment of $24,125.44 in litigation expenses to Class Counsel.

### iii. Attorneys' Fees

Class Counsel's request for $1,666,500.00 in attorneys' fees, representing 30.3% of the settlement fund and a lodestar multiplier of 3.87, is unreasonable. Gyandoh Decl. ¶¶ 54, 61–62, ECF 82. Counsel recorded time on this case that it requests be valued at $430,218.50. Id. ¶ 62.[12]

The threshold question in determining an attorneys' fee award is whether to calculate the award based on the percentage-of-recovery or lodestar method. Courts generally apply the percentage-of-recovery method in class actions involving a common fund, Serano v. Sterling Testing Sys., Inc., 711 F. Supp. 2d 402, 418 (E.D. Pa. 2010) (Pratter, J.), and the lodestar method can be used to cross-check the reasonableness of the percentage-of-recovery award, In re Diet Drugs v. Am. Home Prod. Corp., 553 F. Supp. 2d 442, 467 (E.D. Pa. 2008) (Bartle, J.).

#### 1. Percentage-of-Recovery

To determine what constitutes a reasonable award under the under the percentage-of-recovery method, courts consider Gunter and Prudential factors including:

---

[12] Class Counsel's recorded and requested rates ranged from $250/hour to $915/hour; they were assisted by Plaintiff's counsel, Peter A. Muhic, who recorded and requested a rate of $950/hour. Gyandoh Decl. ¶¶ 57, 61, ECF 82. Class Counsel recorded time that it requests be valued at $404,378.50. Id. ¶ 57. The lodestar of Class Counsel and Muhic's combined 638.3 hours on this case is $430,218.50. Id. ¶ 62. Class Counsel candidly stated at the April 10, 2025, hearing that his firm represents plaintiffs and is not compensated on an hourly basis, and that rather, his fee on any given case is contingent on that case's outcome.

> (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000); Prudential, 148 F.3d at 283. These factors need not be applied in a formulaic way. In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 301 (3d Cir. 2005)). The Court finds that the relevant Gunter and Prudential factors indicate that the requested award of $1,666,500.00 in attorneys' fees is unreasonable.

Certain factors weigh in favor of the reasonableness of the requested attorneys' fees. As noted, there were no objections to the Settlement despite the fact that the Class Notice stated that Class Counsel would request fees up to 33.3% of the Class Settlement Amount. Thus, factor two counsels in favor of finding that the proposed fee award is reasonable. See Ahrendsen v. Prudent Fiduciary Servs., LLC, 2023 WL 4139151, at *7 (E.D. Pa. June 22, 2023) (Bartle, J.). Additionally, and as discussed above, Class Counsel has substantial experience handling ERISA class actions, see Gyandoh Decl. on Prelim. Approval ¶¶ 38, 40, 41, 44–48, ECF 68, which counsels in favor of finding that the proposed fee award is reasonable.

However, numerous other facts weigh against approval of the proposed attorneys' fees.

Factor four, the complexity and duration of the litigation, weighs against approval of the proposed attorneys' fees. While ERISA cases are undeniably complex—particularly where, as here, a multi-employer plan is involved—this case resolved itself at an early stage of litigation. While some discovery was done, no depositions were taken, and the parties engaged in limited motions practice; this weighs against a finding that the proposed fee award is reasonable.

17

Factor six, the amount of time devoted by class counsel, also weights against finding the proposed fee award reasonable. While the Court does not discount Class Counsel's hard work and effort to obtain an immediate and guaranteed benefit to Settlement Class Members, this case reached an early resolution. Discovery was limited, no depositions were taken, no Settlement Class Members objected, and motion practice was limited since Defendants did not object to the Motion for Preliminary Approval of Class Action Settlement, ECF 65, Motion for Final Approval of Class Action Settlement, ECF 80, or Motion for Attorney Fees, Expenses, and Awards, ECF 81. Class Counsel recorded a total of 638.3 hours on this case. Gyandoh Decl. ¶ 62, ECF 82. Cf. Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 150 (E.D. Pa. 2000) (Brody, J.) (holding that the 3,899.84 hours "class counsel devoted to this case represents a substantial commitment to this litigation."). While the Court again acknowledges Class Counsel's diligent work to obtain this Settlement, the time devoted to the case weighs against the reasonableness of the requested fees.

Additionally, and as this Court has noted in other cases, see Cantave, 2024 WL 4829718, the Court's skepticism of the proposed fee award's reasonableness is heightened by the inherent tension between the interests of the Settlement Class and Class Counsel. The greater the attorneys' fee award, the smaller the award is left for the class. See Ward v. Flagship Credit Acceptance LLC, 2020 WL 759389, at *10 (E.D. Pa. Feb. 13, 2020) (Baylson, J.) (citing Brown v. Rita's Water Ice Franchise Co. LLC, 242 F. Supp. 3d 356, 371 (E.D. Pa. 2017) (Savage, J.) & Fed. R. Civ. P. 23 Advisory Committee Note)). The impact of this inverse relationship weighs against reasonableness. See Fed. R. Civ. P. 23 Advisory Committee Note ("[T]he relief actually delivered to the class can be a significant factor in determining the appropriate fee award.").

Accordingly, the Court finds that a 33.3% of recovery for attorneys' fees is unreasonable. The Court instead finds that Class Counsel should be awarded attorneys' fees totaling $950,000.00,

18

which represents approximately 19% of the Settlement Fund. The Court believes, based on the consideration of the relevant factors above, that this is an appropriate award of attorneys' fees.

### 2. Lodestar Method

Under the lodestar method, attorneys' fees are calculated by multiplying the reasonable number of hours worked by a reasonable billing rate. Cullen, 197 F.R.D. at 150. Multiples between one and four are generally considered reasonable. In re Prudential, 148 F.3d at 341. The Court employs the lodestar method only to confirm its finding, under the percentage-of-recovery method, that the requested attorneys' fee award of 33.3% of the Settlement Fund is unreasonable and instead awarding approximately 19% of the Settlement Fund. Class Counsel expended 638.3 hours on this matter and asks for fees using a lodestar multiplier of 3.87. Based on the facts of this case, a lodestar multiplier of 3.87 is unreasonable. The lodestar multiplier under the Court's award of $950,000.00 is 2.2, indicates the reasonableness of this award. See id.

Class Counsel cites to other cases where a fee award of approximately 33.3% of the Settlement Fund was approved. While the Court does not deny the existence of such awards, many of the cases cited by Class Counsel represent lodestar multipliers less than the 3.87 that requested here. See, e.g., Pinnell v. Teva Pharms. USA, Inc., 2021 WL 5609864, at *1 (E.D. Pa. June 11, 2021) (Kearney, J.) (awarding 33.3% of fund as attorneys' fees where lodestar multiplier was 1.3); In re Schering-Plough Corp. Enhance ERISA Litig., 2012 WL 1964451, at *8 (D.N.J. May 31, 2012) (awarding 33.3% of fund as attorneys' fees where lodestar multiplier was 1.6); Pledger v. Reliance Tr. Co., 2021 WL 2253497, at *6 (N.D. Ga. Mar. 8, 2021) (awarding 33.3$ of fund as attorneys' fees where lodestar multiplier was 1.18). Further, many cases cited by Class Counsel in support of their fees request involve litigation of a longer duration and heightened complexity than the case at issue. See, e.g., Pledger v. Reliance Tr. Co., 2021 WL 2253497, at *6

(N.D. Ga. Mar. 8, 2021) (awarding 1/3 of fund as attorneys' fees after 18,000 hours of work by class counsel, consisting of prosecuting this action from its investigative stage, filing of Complaint and Amended Complaint, responding to motions to dismiss, engaging in discovery, responding to motions for summary judgment, and preparing for and conducting a two-week trial); In re Schering-Plough Corp. Enhance ERISA Litig., 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) (awarding 33.3% of fund as attorneys' fees where class counsel conducted numerous depositions and spent over 4,000 hours in the pursuit of this litigation).

Cross-checking the requested attorneys' fee award under the lodestar method confirms the Court's finding, pursuant to the percentage-of-recovery method, that the requested award is unreasonable and confirms the reasonableness the Court's award of $950,000.00 in attorneys' fees.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Final Approval is **GRANTED** and Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Incentive Awards is **GRANTED in part and DENIED in part**.  An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 22\22-4115 McLachlan et al v. International Union of Elevator Constructors et al\22-4115 Memo on Final Approval, Fees, and Expenses.docx